*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DOUG ARTHUR WOLSHLAGER,

Defendant-Appellant.

UNPUBLISHED
August 10, 2026
1:23 PM

No. 372175
Berrien Circuit Court
LC No. 2023-002861-FH

Before: BOONSTRA, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

Defendant, Doug Arthur Wolshlager, appeals by right following his jury-trial convictions for disturbing the peace, MCL 750.170, and resisting or obstructing a police officer, MCL 750.81d(1). On appeal, defendant challenges the sufficiency of the evidence for his convictions and asserts that he is entitled to a new trial because the trial court did not refer him to the appointing authority for indigency screening as required by MCR 6.005(B). For the reasons set forth in this opinion, we disagree with defendant's contentions and therefore affirm.

## I. BACKGROUND AND FACTS

Witnesses at defendant's trial testified to the following facts. Before the incident at issue here, the atmosphere on September 22, 2023 at the Lincoln Township Hall was "quiet" and "[e]asygoing." Defendant entered the township hall that afternoon and proceeded to the front counter. The deputy clerk, Alisa Beilman, spoke first with defendant and had difficulty understanding him because he was slurring his words. After defendant told her "to find someone that spoke English," Beilman went to get her boss, Township Clerk Stacey Loar-Porter.

As Loar-Porter approached the front counter, defendant "screamed at her and said, 'You come out here and talk to me.' " Defendant then stated that he needed a Freedom of Information Act form. Loar-Porter provided defendant a clipboard, the requested form, and a pen, and asked defendant to move to a "small table and chair on the side to complete the forms" to allow "other customers [to] be served" because the station at which defendant was standing had the only computer at which payments could be completed. According to Loar-Porter, defendant responded "that he was f****n' gonna stand there because he had the right to stand there, and he wasn't

-1-

f****n' going where [she] told him to sit, that . . . he paid [her] taxes and [her] salary and that's where he was standing." She further testified that when she asked defendant "to please watch his tone" and requested that defendant sit at the table again, defendant refused and called her various vulgar and expletive-laden terms. Loar-Porter then asked defendant to leave the property, and defendant refused. At that point Loar-Porter called the police. Loar-Porter testified that she was worried that something could happen and the staff in the building "were very uncomfortable at [defendant's] demeanor and his language."[1]

Meanwhile, Beilman retrieved the township's building official, Jim Pheifer, to assist with the situation.[2] Pheifer testified that he attempted to direct defendant to a table to complete his form, and defendant responded by telling Pheifer, "F*** you. I own this place" and by using vulgar terms to describe Pheifer's wife (who was not present). According to Pheifer, defendant physically poked him with the pen he was holding, to which Pheifer responded by taking the pen out of defendant's hand and dropping it. And according to Loar-Porter, defendant told her and Pheifer "that he knew where [they] lived, and he would make sure to take care of [them] and [their] family."

Two police officers, Wesley Springer-Grounds and Joshua Quandt, then arrived at the scene. Officer Springer-Grounds's bodycam video, which was played at trial, shows that when the officers entered the township hall, Pheifer told Officer Springer-Grounds that the employees wanted defendant trespassed. Officer Springer-Grounds then told defendant, "They want you trespassed from this property. . . . They're saying that they want you to leave . . . so unfortunately you gotta go." Defendant responded in unfriendly terms, telling Officer Springer-Grounds, for example, "F*** you. I'm not leaving. Cuff me up and take me to jail m*****f*****." Officer Springer-Grounds then told defendant to "please leave." A few seconds later, Officer Springer-Grounds grasped defendant's arm and said, "Come on. Let's go," to which defendant responded by saying, "No. F*** you. Get off me man. Stop touching me m*****f*****," and moved his arm out of Officer Springer-Grounds's grasp. Officer Springer-Grounds then said, "You've got to leave" and grasped defendant's arm again and, working with Officer Quandt, placed defendant under arrest.

Defendant was charged with disturbing the peace, MCL 750.170, and two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1).[3] Defendant executed a written waiver of his right to counsel in October 2023 and proceeded without counsel at his jury trial in March 2024. Defendant did not testify. The jury ultimately found defendant guilty of disturbing the peace and resisting or obstructing a police officer as to Officer Springer-Grounds,

---

[1] The township's deputy treasurer, Michele Blahnik, testified that she had also called the police "[b]ecause things were getting a little bit more heated, and it was making [her] very uncomfortable" and that defendant was yelling. Similarly, another township employee, Julie Amicarelli, testified that she called the police as she was "[v]ery uncomfortable."

[2] According to Beilman, she requested Pheifer's assistance because he was "the only other man that was in the office."

[3] Defendant was also charged with one count of assault and battery of Pheifer, but that charge was dropped at the beginning of defendant's trial.

but not as to Officer Quant. With the assistance of appellate counsel, defendant later moved for a directed verdict of acquittal on the grounds that there was insufficient evidence to sustain his convictions and alternatively for a new trial, arguing that he should have been appointed a public defender to assist him in obtaining an expert witness to present his intended defense. The trial court denied defendant's motion in May 2025, finding sufficient evidence to support defendant's convictions and that defendant had been properly referred to the public defenders office.

Defendant now appeals.

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence to support both of his convictions. We review de novo whether the evidence was sufficient to support a conviction. *People v Helmer*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 369063); slip op at 10 (citation omitted). Our review is deferential, and we consider "the evidence in the light most favorable to the prosecutor[.]" *Id.* (quotation marks and citations omitted). Our task in reviewing such challenges is to "determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Herndon*, 246 Mich App 371, 404; 633 NW2d 376 (2001) (quotation marks and citation omitted).

## 1. DISTURBING THE PEACE

Defendant first argues that there was insufficient evidence to find him guilty of disturbing the peace. We disagree.

MCL 750.170 provides, in pertinent part, that "[a]ny person who shall make . . . any disturbance . . . in any public building . . . shall be guilty of a misdemeanor." This Court has explained that a "disturbance" as that term is used in MCL 750.170 amounts to "an interruption of peace and quiet; a violation of public order and decorum; or an interference with or hindrance of one in pursuit of his lawful right or occupation." *People v Mash*, 45 Mich App 459, 462; 206 NW2d 767 (1973) (quotation marks and citation omitted). As the jury was informed, to establish that defendant was guilty of disturbing the peace under MCL 750.170, the prosecution had to prove beyond a reasonable doubt that defendant was in a public building and that he "intentionally disrupted the peace and quiet of other persons present and/or interfered with the ability of other . . . persons to perform legal actions or duties." "[D]efendant must have intentionally engaged in conduct that went beyond stating his position or opinion, or the mere expression of ideas."

There is no dispute that the incident in question occurred when defendant was in a public building, the Lincoln Township Hall. But defendant argues that there was no evidence that he intentionally disrupted other persons' peace and quiet or intentionally interfered with others' performance of their legal actions or duties. Defendant asserts that he was merely stating his position or opinion.

Viewing the evidence in the light most favorable to the prosecution, *Helmer*, ___ Mich App at ___; slip op at 10, a rational juror could find beyond a reasonable doubt that defendant

intentionally disrupted the employees' peace and quiet and that he intentionally interfered with their ability to perform their legal actions or duties. See *Herndon*, 246 Mich App at 404. The employees testified that defendant aggressively yelled and called them expletive-laden and vulgar terms, told Loar-Porter and Pheifer "that he knew where [they] lived, and he would make sure to take care of [them] and [their] family," poked Pheifer with a pen, and made multiple employees feel uncomfortable enough to call the police and Beilman feel compelled to request Pheifer's assistance because he was "the only other man that was in the office." This evidence undoubtedly supports a finding that defendant intentionally disrupted the otherwise quiet environment in the township hall, and was not merely stating his position or opinion. Cf. *Lansing v Hartsuff*, 213 Mich App 338, 340, 347; 539 NW2d 781 (1995) (finding sufficient evidence that a defendant violated a city ordinance prohibiting "disturbing the public peace and quiet by loud or boisterous conduct" when there was testimony that the defendant was arguing outside of a home and the arguing could be heard across the street and by neighbors and "[t]he sounds from the disturbance caused at least one of [the] defendant's neighbors to go outside"). And further testimony supports a finding that multiple employees were forced to interrupt their legal actions and duties to respond to defendant's aggression, such as by calling the police, retrieving other employees to assist, and attending to defendant's requests even though, for example, Pheifer, the building official, would not otherwise help a resident fill out a FOIA form as part of his duties. See *Mash*, 45 Mich App at 460, 464 (concluding that there was sufficient evidence to support a defendant's disturbing-the-peace conviction for participating in a sit-in when there was testimony from an individual that "demonstrated that he was unable to perform his janitorial duties in the [public] [b]uilding on account of the crowd's presence"). We therefore conclude that sufficient evidence supported defendant's conviction for disturbing the peace. See *Helmer*, ___ Mich App at ___; slip op at 10; *Herndon*, 246 Mich App at 404.

## 2. RESISTING OR OBSTRUCTING

Defendant next argues that there was insufficient evidence to find him guilty of resisting or obstructing a police officer. Again, we disagree.

For defendant to be convicted of resisting or obstructing Officer Springer-Grounds under MCL 751.81d(1), the prosecution needed to prove, beyond a reasonable doubt, that "defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered" Officer Springer-Grounds and that he "knew or had reason to know that" Officer Springer-Grounds "was a police officer performing his . . . duties." *People v Vandenburg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted). "Obstruct" is defined for purposes of this offense to "include[] the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). The prosecution must further establish that Officer Springer-Grounds's actions were lawful. See *Vandenberg*, 307 Mich App at 68. More specifically, as the jury was instructed, the prosecution needed to prove beyond a reasonable doubt that Officer "Springer-Grounds gave defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act."

Defendant does not dispute that he knew Officer Springer-Grounds was a police officer performing his duties. Defendant's argument is rather premised on the assertion that Officer Springer-Grounds "was not giving a lawful command when he asked [defendant] to 'please leave.' " Defendant emphasizes Officer Springer-Grounds's testimony at trial that he asked

defendant to "please leave" several times and that when defendant did not leave, he arrested defendant. Thus, defendant's argument is that Officer Springer-Grounds's statements to him were merely requests, not commands.

Defendant's argument, however, overlooks the bodycam footage showing that Officer Springer-Grounds told defendant "you gotta go" more than thirty seconds before Officer Springer-Grounds first touched defendant's arm. As Officer Springer-Grounds explained to defendant, the township hall staff "want you trespassed from this property. . . . They're saying that they want you to leave . . . so unfortunately you gotta go." "You gotta go" is undoubtedly a more assertive phrase than "please leave"; indeed, it cannot be characterized as anything but a command. In context, Officer Springer-Grounds made it clear to defendant that he was being trespassed and was required to leave. And given the other evidence presented and defendant's lack of argument to the contrary, we have no reason to believe that Officer Springers-Grounds's command to defendant to "go" was unlawfully given. Cf. *People v Lyons*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 370840); slip op at 5 (concluding that an "officer's command for [the] defendant to remain in the vehicle was lawful in light of the officer's concern for his safety and for the safety of others, so [the] defendant's failure to comply with the officer's lawful command led to his lawful arrest"). Further, a reasonable jury could find that defendant knowingly failed to comply with this lawful command in light of the more than thirty seconds that passed after this command was given and before Officer Springer-Grounds first grasped defendant, thus providing sufficient evidence that defendant obstructed Officer Springer-Grounds. See MCL 750.81d(7)(a); *Vandenberg*, 307 Mich App at 68. Indeed, after Officer Springer-Grounds told defendant "you gotta go," defendant stated, "F*** you. I'm not leaving. Cuff me up and take me to jail m*****f*****." Hence, in light of the evidence showing that Officer Springer-Grounds gave defendant a lawful command that defendant knowingly failed to comply with, in addition to defendant's undisputed knowledge that Officer Springer-Grounds was a police officer performing his duties, a rational trier of fact could find that the essential elements of resisting or obstructing Officer Springer-Grounds were proven beyond a reasonable doubt.[4] See *Herndon*, 246 Mich App at 404. Cf. *People v Morris*, 314 Mich App 399, 415; 886 NW2d 910 (2016) (concluding that a jury verdict finding a defendant guilty under MCL 750.81d(1) was not against the great weight of the evidence when "[t]he jury apparently found credible . . . the officer's testimony that defendant refused to comply with loud and clear commands" among other evidence).

## B. REFERENCE FOR INDIGENCY SCREENING

Defendant lastly contends that, in violation of MCR 6.005(B), the trial court failed to refer him to the appointing authority for indigency screening when he expressed interest in obtaining

---

[4] Defendant also argues that Officer Springer-Grounds "was not making a lawful arrest because he did not observe [defendant] committing a misdemeanor, which would justify a warrantless arrest." Given our conclusion that there is sufficient evidence that Officer Springer-Grounds gave a lawful command that defendant knowingly failed to comply with, which independently supports a conviction under MCL 750.81d(1), see MCL 750.81d(7)(a); *Vandenberg*, 307 Mich App at 68, we need not opine on whether defendant resisted a lawful arrest.

the assistance of a public defender to retain an expert witness. We are also unpersuaded by this argument.

This Court reviews for clear error a trial court's factual findings regarding a defendant's waiver of his right to counsel. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). "However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id.* Similarly, "[i]nterpretation of a court rule is a question of law subject to review de novo on appeal." *People v Robbins*, 223 Mich App 355, 359; 566 NW2d 49 (1997).

The Michigan Constitution and the Sixth Amendment of the United States Constitution, applicable to Michigan via the Fourteenth Amendment, secure an accused defendant facing incarceration the right to self-representation and "[t]he right to assistance of counsel at all critical stages of criminal proceedings[.]" *People v King*, 512 Mich 1, 11; 999 NW2d 670 (2023) (citations omitted). "Although the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as a guarantor of a fair trial, is the standard, not the exception, in the absence of a proper waiver." *People v Spears*, 346 Mich App 494, 504-505; 13 NW3d 20 (2023) (cleaned up). Among other protections of the right to counsel set forth in our state's caselaw, statutes, and court rules, MCR 6.005(B) provides, in pertinent part:

> Questioning Defendant About Indigency. If the defendant requests a lawyer and claims financial inability to retain one, the court must determine whether the defendant is indigent unless the court's local funding unit has designated an appointing authority in its compliance plan with the Michigan Indigent Defense Commission. *If there is an appointing authority, the court must refer the defendant to the appointing authority for indigency screening*. . . . (Emphasis added.)

Defendant argues that, in violation of MCR 6.005(B), the trial court did not properly refer him to the appointing authority for indigency screening. But this contention is unsupported by the record. After informing the trial court that he wanted to represent himself and that he would not request the assistance of a public defender at his arraignment, defendant executed a written waiver of his right to counsel in October 2023. At a January 2024 hearing, defendant informed the trial court of his desire to have an expert witness testify regarding the symptoms of low blood sugar in support of a defense that defendant's diabetes impacted his actions underlying the charged offenses. After defendant informed the court that he had not identified such an expert, the court told defendant that if he "had a public defender, they could look for that," but that because defendant had pursued self-representation, it was his obligation to identify such an expert. Defendant then stated that he was in "the process of" identifying an expert and had taken "the first steps."

At a status conference less than a week later, the trial court and defendant further discussed the possibility of defendant obtaining an expert witness to testify about the impact of low blood sugar on behavior. The trial court recognized that "[g]etting an expert is not an easy task, certainly not for somebody who's not represented," and asked whether defendant wanted to request a public defender to assist him. Defendant agreed that it would be difficult to obtain an expert and said that he'd like to ask for a public defender but did not "want the public defender to make any arguments." The court noted that the public defenders office "have said that they don't do standby

counsel" and that defendant would need to be screened by the office to see if they would "agree to take [his] case so they c[ould] help [him] find an expert." The court then informed defendant that "Scott Sanford is the Chief Public Defender" and that:

> He's the guy you gotta go to, to ask for them to represent you. They have to make a decision. . . . I cannot appoint you a public defender. You gotta go to the public defender, you will out a form, and they question you and they'll decide whether or not you qualify for counsel. So, I mean, that has to be done. . . . You're gonna have to get that expert or get help from the public defender's office in getting that expert or otherwise, . . . you're not gonna be able to present any of that evidence, 'cause you can't testify to that, you're not an expert in diabetes.

Defendant stated he would make inquiries with Sanford that day. However, at the next status conference approximately one month later, defendant continued to insist on representing himself and did not mention the public defender or an expert witness. Defendant proceeded without representation at his jury trial.

Thus, in response to defendant's expressed interest in obtaining an expert witness, the trial court notified defendant that if he wished to request the assistance of the public defenders office in doing so, he would need to speak with them separately. The trial court identified the relevant authority by name, telling defendant specifically who he would need to request representation from, and further explained the process by which the public defenders office would conduct the indigency screening, as well as the importance of obtaining the public defender's assistance in presenting defendant's intended defense. On the record before us, we conclude that the trial court referred defendant to the appointing authority for indigency screening in compliance with MCR 6.005(B). We therefore find no reversible error.

## III. CONCLUSION

For the reasons stated, sufficient evidence supported defendant's convictions and defendant was properly referred to the appointing authority for indigency screening in compliance with MCR 6.005(B). The judgment of the trial court is therefore affirmed.

/s/ Mark T. Boonstra
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin